CAROL M. MORGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; HARRY T. MORGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morgan v. Commissioner
Docket Nos. 12585-80, 13225-80.
United States Tax Court
T.C. Memo 1984-604; 1984 Tax Ct. Memo LEXIS 67; 49 T.C.M. (CCH) 127; T.C.M. (RIA) 84604; November 20, 1984. *67 Ps created a so-called family trust and transferred their services and assets to such trust. Held: (1) Such trust is not recognized as a separate taxable entity for Federal tax purposes, and Ps are taxable on their income. (2) Ps are liable for the additions to tax under sec. 6651(a), I.R.C. 1954, for failure to file timely returns, sec. 6653(a), I.R.C. 1954, for negligence or intentional disregard of rules and regulations, and sec. 6654, I.R.C. 1954, for underpayment of estimated taxes. Carol M. Morgan, pro se in docket No. 12585-80. Harry T. Morgan, pro se in docket No. 13225-80. Cruz Saavedra and Dennis L. Perez, for the respondent. SIMPSON MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Additions to Tax
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
I.R.C. 1954
Carol M.
1975
$1,901.00
$ 475.00
$ 95.00
$ 82.00
Morgan
1976
3,665.00
916.00
183.00
137.00
1977
4,495.00
1,125.00
225.00
160.00
1978
7,161.00
1,790.00
358.00
229.00
Harry T.
1975
$1,901.00
$ 475.00
$ 95.00
$ 82.00
Morgan
1976
3,665.00
916.00
183.00
137.00
1977
4,495.00
1,125.00
225.00
160.00
1978
7,161.00
1,790.00
358.00
229.00
The *68 issues for decision are: (1) Whether a so-called family trust created by the petitioners is to be recognized as a separate taxable entity for Federal income tax purposes; and (2) whether the petitioners are liable for the additions to tax under section 6651(a) for failure to file timely Federal income tax returns, under section 6653(a) for negligence or intentional disregard of rules and regulations, or under section 6654 for underpayment of estimated taxes. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Harry T. Morgan and Carol M. Morgan, were husband and wife and resided in Woodland Hills, Calif., at the time of filing their petitions in this case. They did not file individual or joint Federal income tax returns for 1975, 1976, 1977, or 1978. On May 29, 1975, Mr. Morgan, as grantor, established a "Pure Trust" (the trust). Mrs. Morgan and Steven Morgan, their son, were the trustees of such trust. At that time, Steven Morgan was 20 years of age and was attending college.A checking account was established for the trust, *69 and the trustees had signature authority for such account. The beneficial interests in the trust were divided into 100 units, and at the time of the creation of the trust, Mrs. Morgan and Steven Morgan owned approximately 50 percent of such units.In 1983, 48 of such units were owned by Steven Morgan, 48 by Pam Morgan, his sister, and 4 by Robert Muncaster. Mr. Morgan never owned any of such units. The trust was to continue for 25 years unless terminated earlier by a unanimous vote of the trustees. Mr. Morgan entered into a contract with the trust providing that he would render all of his services for the trust, and in return, the trust was to provide him with a place to live. During the years 1975, 1976, 1977, and part of 1978, he was employed by Litton Systems, Inc. (Litton), and in 1978, he became an employee of The Marquardt Company (Marquardt). He requested those employers to pay the trust for his services, but the employers declined to do so. The checks for his services were deposited in the checking account for the trust. In 1975, 1976, 1977, and 1978, Mrs. Morgan was employed by CBS, Inc. (CBS), and she deposited the checks for her compensation in the trust checking *70 account. Mr. Morgan was also engaged in a consulting business, and he deposited the income from that business in the checking account of the trust. Before the creation of the trust, Mr. and Mrs. Morgan and their two children lived at 22926 Dolorosa, Woodland Hills, Calif. (the property). Such property was transferred to the trust, and the Morgan family continued to live there through the years at issue. The property was subject to a mortgage, and after the creation of the trust, the trust made the payments on such mortgage. The trust also paid the expenses for repairs, telephone, and utilities on the property. The trust leased two automobiles which were used by Mr. and Mrs. Morgan. The trust paid certain promotional and entertainment expenses incurred in connection with Mr. Morgan's consulting business and paid for certain books, seminars, and magazines acquired in connection with such business. Mr. Morgan received a weekly payment from the trust to cover certain incidental expenses. Before the trust, Mrs. Morgan handled thepayment of most family expenses, and after the creation of the trust, she, as trustee, continued to handle such expenses. The trust filed United States fiduciary *71 income tax returns for the part of 1975 when it was in existence and for 1976, 1977, and 1978. On such returns, it reported wages received for the services of Mr. and Mrs. Morgan and the income received from the consulting business. It claimed deductions for "consultant fees" or "trustee advances," for "trustee medical" or "medical-denital (insurance)," for depreciation on the property, for the expenses of repairs, telephone, and other utilities on such property, for the interest on the mortgage on the property, for the promotional and entertainment expenses of Mr. Morgan's consulting business, for the books, magazines, and seminars required for such business, for the leasing of the automobiles used by Mr. and Mrs. Morgan, and for charitable contributions. For each year, the deductions equaled the income, and each return showed no taxable income. In his notices of deficiency, the Commissioner determined that the trust should be disregarded for Federal income tax purposes, and he determined deficiencies against Mr. and Mrs. Morgan Separately by allocating one-half of the total income reported by the trust to each of them since they were residents of a community property state. The *72 record reveals that the Morgans received some wages in addition to those reported by the trust, and based on the record, we find that Mr. and Mrs. Morgan received the following amounts of income: Year
Amount
1975
$31,936.07
1976
35,177.71
1977
37,624.58
1978
49,365.00
The Commissioner now concedes that in computing the taxable income of Mr. and Mrs. Morgan, they are entitled to the following deductions: Item
1975
1976
1977
1978
Interest expense
$1,339.81
$1,303.93
$1,283.00
$1,412.00
Medical
629.00
723.00
1,259.00
Business travel
309.00
101.00
784.00
Real estate taxes
683.00
1,080.95
1,927.00
1,029.00
Business vehicle
expense
900.00
1,000.00
1,100.00
1,200.00
Business telephone
expense
437.00
Professional
publications, dues,
fees, etc.
833.00
1,194.00
721.00
Business
entertainment
expenses
1,493.00
1.681.00
Business
related expenses
120.00
Marketing
expenses
8,550.00
In addition, we find, based on the record, that Mr. and Mrs. Morgan contributed to the Faith Baptist Church $4,318.35 in 1977 and $5,138.00 in 1978. In computing the taxable income of Mr. and Mrs. Morgan, each of them is required to report one-half of the total income received by them and is entitled to deduct one-half of the deductions allowed them since they lived in a community *73 property State during the years at issue. OPINION In this case, we have another attempt to avoid the taxation of income by the creation of a family trust, and we must decide whether the trust is to be recognized as a separate taxable entity for federal income tax purposes. The Commissioner's position is based on three arguments: (1) The trust should be disregarded because it lacks economic reality; (2) it should be disregarded because the arrangement constitutes an impermissible attempt to assign income; and (3) it should be disregarded because of the grantor trust provisions of sections 671 through 677. The petitioners have the burden of proving that they are not taxable on the income. Rule 142(a), Tax Court Rules of Practice and Procedure[2]; Welch v. Helvering,290 U.S. 111 (1933). [3] In connection with similar family trusts, the Court of Appeals for the Seventh Circuit Observed in Schulz v. Commissioner,686 F.2d 490, 492-493 (1982), affg. a Memorandum Opinion of this Court: It takes no particular acumen in tax law to *74 know that * * * [these] trusts cannot be treated like ordinary trusts.The only real question is which of several established doctrines the Internal Revenue Service should use to deny their existence as taxable entities. * * * It is fundamental to our income tax regime that personal consumption expenditures--food, clothing, travel, education, entertainment--do not generate income tax deductions unless they are somehow inextricably linked to he production of income. When taxpayers buy cars, travel, or take out life insurance policies, they make those expenditures out of after-tax dollars. The trust devices here are a transparent attempt to alter that state of affairs by turning all the families' activities into trust activities and all the families' expenses into expenses of trust administration. If this device worked, the * * * [petitioners] would, unlike the rest of us, make all their consumptive expenditures with pre-tax dollars. [Footnote ref. omitted.] One of the primary principles of our system of income taxation is that income must be taxed to the one that earns it. Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949). Attempts to subvert this principle by deflecting *75 income away from the true earner to another entity by means of contractual agreement, however cleverly drafted, are not recognized as dispositive for Federal income tax purposes despite their validity under applicable State law. Lucas v. Earl,281 U.S. 111 (1930); United States v. Basye,410 U.S. 441 (1973). The choice of the proper taxpayer revolves around the question of which person or entity in fact controls the earningof the income rather than the question of who ultimately receives the income. Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978); American Savings Bank v. Commissioner,56 T.C. 828 (1971). In the present case, Mr. Morgan worked for Litton, and Mrs. Morgan for CBS, before the creation of the trust, and they continued to work for those same employers after the creation of the trust. Though the Morgans requested their employers to pay the trust for their services, the employers declined to enter into any arrangements with the trust. The Morgans received the checks in payment for their services and transferred those checks to the trust. The income was earned by the services performed by the Morgans, and there is no reason *76 to believe that the trust had any control over their earning of such income. There was no arrangement between the trust and the employers of the Morgans governing the performance of their services and providing for the payment for such services to be made to the trust. The employment arrangement between Mr. Morgan and Litton was already established before the creation of the trust, and that between Mrs. Morgan and CBS was similarly established beforehand; nothing was changed after the creation of the trust. The petitioners appear to maintain that they transferred services, not income, to the trust, but such an argument is based on a play on words. They have failed to convince us that there was any substance to their purported transfer of their services to the trust, in our view, the purpose and effect of the arrangement was an attempt to assign their income to the trust to avoid taxation of it, and it is well settled that such an attempt must fail. Vercio v. Commissioner,supra.
In addition, it is altogether clear that the trust arrangement lacked economic substance. Before the creation of the trust, Mr. and Mrs. Morgan were employed and receiving compensation for their services. *77 Such compensation was used to defray their family expenses: the payments on the mortgage on their home, the cost of maintaining such home, the payment of the utilities used by the family, the payment of expenses of operating automobiles used by the family, and the payment of medical expenses of the family. The family then lived in the Dolorosa property. After the creation of the trust, the family continued to live in such property, and although the income of Mr. and Mrs. Morgan was transferred to the trust, that income was still used to pay all the same family expenses. In substance, nothing changed as a result of the creation of the trust. In fact, the payment of the expenses was even handled in the same manner before and after the creation of the trust. We have a transparent attempt to convert personal expenses into deductible ones, and the courts have repeatedly struck down similar paper transactions. Markosian v. Commissioner,73 T.C. 1235 (1980), and cases cited therein. The petitioners argue that their trust is different because Mr. Morgan was not a trustee and because his son, Steven, was a trustee. However, when the trust was created, the son was 20 years of age, *78 was attending college, and was still living at home with the family. When the son was questioned about trust expenditures, it was clear that he had no knowledge of how the trust funds were expended and that Mrs. Morgan controlled the expenditures by the trust. Making the son a trustee was merely an artifice designed to alter the tax consequences, but the record makes clear that his role did not in fact affect the use of the family's funds. [4] His role as a trustee did not alter the substance of the arrangement and does not serve to distinguish this case from Markosian and the other family trust cases. Under these circumstances, we conclude and hold that the arrangement by the Morgans constituted an impermissible attempt to assign their income and that the trust lacked any economic substance. Consequently, we hold that the Morgans are taxable on the income earned by them and their assets. Next, we must decide whether to sustain the additions to tax determined by the Commissioner. Section 6651(a) imposes an addition to tax on a taxpayer who fails *79 to file a timely return unless it is shown that such failure was due to reasonable cause and not due to willful neglect.The petitioner bears the burden of proving that the addition to tax does not apply. Rule 142(a); Ehrlich v. Commissioner,31 T.C. 536, 540 (1958). Here, the petitioners filed to returns for the years at issue, and they have provided no evidence to establish that their failure was due to reasonable cause. Accordingly, we sustain the Commissioner's determination with respect to the addition to tax under section 6651(a). Section 6653(a) provides an addition to tax of 5 percent of the underpayment of tax if any portion of such underpayment is due to negligence or to an intentional disregard of rules and regulations. The petitioner bears the burden of proving that the addition to tax does not apply. Rule 142(a); Bixby v. Commissioner,58 T.C. 757, 791 (1972). Here, too, the petitioners have failed to present any evidence showing that the underpayment was not due to negligence or intentional disregard of rules and regulations; in fact, the record shows that their conduct was due to negligence or intentional disregard of the rules. Hence, we also sustain the Commissioner's *80 determination under section 6653(a). Section 6654 imposes an addition to tax when a taxpayer fails to pay estimated taxes, and he has the burden of proving that he is not liable for such addition to tax. Rule 142(a); Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980). The petitioners presented no evidence with respect to such issue, and, therefore, we also sustain the Commissioner's determination with respect to the addition to tax under section 6654. Finally, we must decide whether to award damages under section 6673, as requested by the Commissioner. Formerly, section 6673 authorized the Court to award damages up to $500 "Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay." [5] *81 A host of these family trust cases have been brought before the Court without merit. However, we have carefully weighed all the surrounding circumstances (including the grounds given by the petitioners for instituting the case) and have concluded not to award damages under section 6673 in this particular proceeding. Decisions will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
3. Whitesel v. Commissioner,T.C. Memo. 1983-9, affd. 745 F.2d 59↩ (6th Cir. 1984).
4. Benson v. Commissioner,T.C. Memo. 1983-458; Staats v. Commissioner,T.C. Memo. 1983-176; Swayze v. Commissioner,T.C. Memo. 1983-168↩.
5. Sec. 6673 has been revised to provide: "Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision." Sec. 292(b), Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 574. The amendment is applicable to cases commenced after 1982 (96 Stat. 574) or cases pending in the Tax Court 120 days after July 18, 1984 (sec. 160, Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 696).